UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARINA NOBREGA, et al.,** | |
| **Plaintiffs,** | Civil Action No. 22-4204 (JXN) |
| v. | **OPINION AND ORDER** |
| **TROY-BILT, LLC, et al.,** | |
| **Defendants.** | |

**CLARK, Magistrate Judge**

**THIS MATTER** comes before the Court on a motion by Defendants Troy-Bilt, LLC ("Troy-Bilt"), MTD Products, Inc. ("MTD"), and Home Depot U.S.A., Inc. ("Home Depot") (collectively "Defendants") seeking to: (1) disqualify Stephen M. Tatonetti, Esq. and Locks Law Firm LLC (collectively "Locks Law") from representing Plaintiffs Marina Nobrega, I. N. and A. N. (collectively "Plaintiffs") and Counter Defendant Candido Nobrega in this matter; and (2) remove and replace Marina Nobrega as guardian ad litem for A. N. in this matter.[1] *See* Dkt. No. 34. Plaintiffs oppose Defendants' motion. *See* Dkt. No. 35. For the reasons set forth below, Defendants' motion [Dkt. No. 34] is **GRANTED in part and DENIED in part**.[2]

**I.    BACKGROUND**

Marina and Candido Nobrega are the parents of A.N., a minor.[3] Plaintiffs' claims in this

---

[1] Although Locks Law appears to be advocating upon behalf of Plaintiffs and Candido in this matter and has entered an appearance on behalf of all the foregoing parties which has not been withdrawn, the Certification of Stephen M. Tatonetti, Esq. filed in connection with Plaintiffs' brief in opposition to Defendants' present motion states that Locks Law represents only Marina, A. N. and I. N. Dkt. No. 35, Certification of Stephen M. Tatonetti, Esq. at ¶ 1.

[2] Defendants' motion to disqualify Locks Law is GRANTED. Defendants' motion to remove and replace Marina Nobrega as guardian ad litem for A. N. is DENIED without prejudice.

[3] The Court notes that Plaintiffs identify A. N. by her full name in their unsealed Amended Complaint. *See* Dkt. No. 19.

matter arise from injuries suffered by A. N. on May 14, 2020, while Marina, Candido, A. N., and her brother, I. N., who is also a minor, were at their home in West Milford, New Jersey, and Candido was mowing their yard with a riding mower.[4] According to Plaintiffs, A. N. was riding on Candido's lap while he operated the mower when her foot fell into "a gaping hole [which] was left on the top of the lawnmower's deck which exposed the blades to its users" and was "immediately mangled by the exposed blades." Dkt. No. 35 at p. 4.  Although A. N. received prompt medical attention, she was "catastrophically injured" and sustained "permanent disfigurement and dismemberment of her right foot." Dkt. No. 19, Amended Complaint at ¶ 15.

The riding mower Candido was using was a Troy-Bilt Bronco 42 Riding Lawn Mower, Model No. 13AL78BS023. *See* Dkt. No. 35-3. The mower was manufactured by Defendant Troy-Bilt in 2019 and purchased from Defendant Home Depot by Candido. *Id.* According to Plaintiffs, beneath the seat of the mower is a deck which houses the mower blades and "[m]ounted on the right outside top-edge of the deck, is a spring-hinged deflector unit, which in part gives the operator access to the blades through the deck." Dkt. No. 35 at p. 7-8. "In the operational position, the spring-loaded chute deflector overhangs beyond the body of the mower and protects the user from the blades." *Id.* at p. 8. However, "[i]f the chute is removed entirely, there is a large opening in the deck and blades are directly accessible." *Id.* Plaintiffs assert that from 2004 to 2014, the mower was designed and manufactured with two screws, two nuts and two washers attaching the chute to the deck, but from 2015 on, the mower was "re-designed and re-manufactured" with only one screw and nut "securing the chute to the deck." *Id.*

Plaintiffs claim that the mower was delivered with the chute attached to the deck and that the chute was shipped with a "temporary upright delivery brace" which was "designed to protect

---

[4] In the interest of clarity, the Court refers to Marina and Candido by their first names.

the chute when being shipped." *Id.* The owner of the mower was purportedly "required to remove and discard the brace" which then activated the "spring-hinged system" and caused the chute to "automatically close and operate in the downward safety position." *Id.* According to Plaintiffs, the mower was stored in a shed in the back of the Nobrega's property. *Id.* Because the mower did not fit through the doorway of the shed with the chute in its downward safety position, Candido was "required to manually lift the chute" when moving the mower in and out of the shed. *Id.*

On May 14, 2020, the date of A. N.'s accident, Plaintiffs contend that Candido manually lifted the chute to get the mower out of the shed and then released the chute which caused it to return to "the operational position . . . ." *Id.* at p. 8-9. Candido then "mounted the [m]ower and started cutting the lawn." *Id.* at p. 9. Plaintiffs claim that when Candido began cutting the lawn, "the chute was attached and working." *Id.* However, at some point, purportedly unbeknownst to Candido, Plaintiffs contend that the chute detached from the mower and the blades were exposed. *Id.*

The parties' filings in this matter set forth differing assertions as to the exact circumstances surrounding A. N.'s injuries. Plaintiffs' Amended Complaint vaguely states only that A. N., who was eight years old at the time, was "present at her family's residence and was in the yard as her father, Candido, was mowing the lawn," and alleges that "[a]s a result of the defective nature of the [mower]," A. N.'s foot was "caught in the opening of the mower deck which should have been covered by the plastic chute" and A. N. was "catastrophically injured causing permanent disfigurement and dismemberment of her right foot." Amended Complaint at ¶ 11-15.

Plaintiffs' brief in opposition to Defendants' present motion presents their version of events in which A. N. was riding on the mower with Candido. *See* Dkt. No. 35. Specifically, Plaintiffs allege that approximately thirty minutes prior to A. N.'s accident, she "waived [sic] to [Candido]

to ask if she could ride on the [m]ower," at which point Candido turned off the mower, A. N. approached from the left side of the mower, and Candido "lifted [A. N.] and placed her on his right leg." *Id.* at p. 9. Candido then, purportedly "embraced [A. N.] with his right arm" while she "straddl[ed] his leg" and Candido started the mower. *Id.* According to Plaintiffs, A. N. had been on the mower for approximately five minutes and was still "on her dad's lap" when "she shifted and her right foot landed on top of the deck." *Id.* Because the chute had purportedly become detached from the mower at an unknown juncture, A. N.'s foot allegedly "went through the unguarded opening of the deck and contacted the blades." *Id.* Candido, who "still had his arm firmly around [A. N.]," then "pulled her up and away from the blades" and "lifted her and ran away from the machine, placing her on the ground to address her injury." *Id.*

Defendants, relying on notes from various medical providers who responded to and/or treated A. N.'s injuries, set forth yet another version of events in which A. N.'s injuries occurred when she "jumped off" the mower while it was still in motion and the mower ran over her right foot. Dkt. No. 34-1 at p. 3-4.

Following the accident, A. N. was transported by helicopter to a local trauma hospital. Dkt. No. 35 at p. 9. After A. N. had been removed from the scene of the accident, Plaintiffs claim that the neighbors "cleaned the blood off the [m]ower and put it back in the shed" and "inspected the scene" and realized the chute was missing. *Id.* at p. 10. "Days after the accident," Candido purportedly found the missing chute in the front of the property "approximately 50-75 yards from the incident scene." *Id.*

Thereafter, on May 9, 2022, Candido and Marina filed this action on their own behalf and on behalf of A. N. and I. N. asserting claims against Defendants for: (1) strict liability; (2) breach of implied warranty; (3) breach of express warranty; (4) negligent infliction of emotional distress;

and (5) a "parental count" on behalf of Marina. *See* Dkt. No. 1-1. On June 23, 2022, Defendants removed the case from the Superior Court of New Jersey, Passaic County, Law Division, to this Court pursuant to 28 U.S.C. § 1441, asserting diversity jurisdiction under 28 U.S.C. § 1332. *See* Dkt. No. 1.

Following removal, Defendants filed their Answer to Plaintiffs' Complaint and asserted a counterclaim against Candido for contribution. *See* Dkt. No. 5. On February 3, 2023, Plaintiffs filed their Amended Complaint which changed the name of Defendant Home Depot from "The Home Depot, Inc." to "Home Depot U.S.A., Inc." *See* Amended Complaint. On February 7, 2023, Defendants filed their Answer to Plaintiffs' Amended Complaint and again asserted their counterclaim against Candido for contribution. *See* Dkt. No. 21, Counterclaim. On April 10, 2023, pursuant to a stipulation submitted by the parties, the Court dismissed Candido as a plaintiff in this matter. *See* Dkt. No. 27. The stipulation states that the Counterclaim against Candido is "not dismissed and remain[s] open on the docket." *Id.*

Thereafter, Defendants filed the present motion seeking to: (a) disqualify Locks Law from representing Plaintiffs and Candido in this matter and; (b) to remove Marina as A. N.'s guardian ad litem and appoint a new guardian ad litem for A. N. *See* Dkt. No. 34. Plaintiffs oppose Defendants' motion. *See* Dkt. No. 35.

II.   **DISCUSSION**

   **A.  Motion to Disqualify Locks Law**

In this District, questions of attorney ethics are governed by Local Civil Rule 103.1(a), which provides that the conduct of attorneys admitted before this Court shall be governed by the Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court. *FMC Corp. v. Guthery,* 2009 WL 485280, 2009 U.S. Dist. LEXIS 14609, 2009

WL 485280 (D.N.J. February 24, 2009); *see also Carlyle Towers Condo. Ass'n v. Crossland Sav.,* 944 F.Supp. 341, 345 (D.N.J.1996). Typically, when interpreting the Rules of Professional Conduct, courts "look[ ] to New Jersey's state courts' interpretations of them as primary authority and modif[y] that interpretation when required or permitted by federal law." *Guthery,* 2009 WL 485280, at *3, 2009 U.S. Dist. LEXIS 14609 at *5. However, "while efforts should be made to avoid inconsistent determinations under [New Jersey's Rules of Professional Conduct], and this Court may certainly look for guidance to the decisions of the New Jersey state courts, our Local Rules do not require that this Court be bound by those decisions." *Fragoso v. Zhejun Piao*, 433 F. Supp. 3d 623, 627 (D.N.J. 2019) (citing *Carlyle Towers*, 944 F. Supp. at 345).

Defendants argue Locks Law should be disqualified from representing Plaintiffs or Candido in this matter under New Jersey Rule of Professional Conduct 1.7, which provides that:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
>> (1) the representation of one client will be directly adverse to another client; or
>>
>> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
>> (1) each affected client gives informed consent, confirmed in writing, after full disclosure and consultation, provided, however, that a public entity cannot consent to any such representation. When the lawyer represents multiple clients in a single matter, the consultation shall include an explanation of the common representation and the advantages and risks involved;

> (2) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (3) the representation is not prohibited by law; and
>
> (4) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal

RPC 1.7.

When considering a motion to disqualify counsel, the movant bears the burden of proving that disqualification is appropriate because the RPCs were violated. *See Maldonado v. New Jersey,* 225 F.R.D. 120, 136–37 (D.N.J. 2004). Further, the movant's burden is a heavy one as "[m]otions to disqualify are viewed with 'disfavor' and disqualification is considered a 'drastic measure which courts should hesitate to impose except when absolutely necessary.'" *Alexander v. Primerica Holdings, Inc.,* 822 F.Supp. 1099, 1114 (D.N.J. 1993) (quoting *Schiessle v. Stephens,* 717 F.2d 417, 420 (7th Cir. 1983) (internal quotation marks and citation omitted)). As a result, in determining whether to disqualify counsel, the Court must closely and carefully scrutinize the facts of each case to prevent unjust results. *See Montgomery Acad. v. Kohn,* 50 F.Supp.2d 344, 349 (D.N.J. 1999).

Further, given the fact sensitive nature of motions to disqualify counsel, the Court cannot blindly apply the RPCs without any consideration of the parties' relative hardships. *Id.* (citing *Gould, Inc. v. Mitsui Mining & Smelting Co.,* 738 F.Supp. 1121, 1126 (N.D. Ohio 1990)). Instead, the Court must "balance the need to maintain the highest standards of the [legal] profession against a client's right to freely choose his counsel." *Steel v. Gen. Motors Corp.*, 912 F. Supp. 724, 733 (D.N.J. 1995), *aff'd sub nom. Cardona v. Gen. Motors Corp.*, 942 F. Supp. 968 (D.N.J. 1996) (internal quotation marks and citations omitted). However, if there is any doubt as to the propriety

of an attorney's representation of a client, such doubt must be resolved in favor of disqualification. *Maldonado,* 225 F.R.D. at 137.

New Jersey's courts have held that "[o]ne of the most basic responsibilities incumbent on a lawyer is the duty of loyalty to his or her clients. From that duty issues the prohibition against representing clients with conflicting interests." *Matter of Opinion No. 653,* 132 N.J. 124, 129, 623 A.2d 241 (1993); *accord In re Opinion 682,* 147 N.J. 360, 368, 687 A.2d 1000 (1997). The RPCs codify this ethical duty in RPC 1.7, which requires an attorney uphold to his client "undivided loyalty and allegiance." *Kramer v. Ciba–Geigy Corp.,* 371 N.J.Super. 580, 598, 854 A.2d 948 (App. Div. 2004) (internal quotation marks and citation omitted).

Under RPC 1.7(a)(2), a lawyer cannot represent a client if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client." "RPC 1.7 reflects 'the fundamental understanding that an attorney will give complete and undivided loyalty to the client [and] should be able to advise the client in such a way as to protect the client's interests, utilizing his [or her] professional training, ability and judgment to the utmost.'" *J.G. Ries & Sons, Inc. v. Spectraserv, Inc.,* 384 N.J.Super. 216, 223 (App. Div. 2006) (first alteration in original) (quoting *State ex rel. S.G.,* 175 N.J. 132, 139 (2003)).

In support of their motion, Defendants rely primarily upon the New Jersey Supreme Court's directive that:

> because of the conflict of interest inherent in the situation . . . an attorney should not represent both the driver of a car and his passenger in an action against the driver of another car, unless there is a legal bar to the passenger suing his own driver, as for example, where they are . . . employees of the same employer and the accident occurred in course of their employment. Where an attorney does represent both a driver and his passenger and no such legal bar exists, if a crossclaim or counterclaim is made by the other driver, a conflict of interest arises and the Supreme Court has advised the Assignment Judges that the attorney should not be permitted to continue to

represent either the driver or his passenger.

*McDaniel v. Man Wai Lee*, 419 N.J. Super. 482, 497, 17 A.3d 816, 824–25 (App. Div. 2011) (citing 91 N.J.L.J. 68 (Feb. 1, 1968)).

Although not directly analogous because this matter involves an accident which occurred during the operation of a riding mower instead of an automobile, and although Defendants are not the operators of a second vehicle but rather the parties responsible for the design, manufacture and sale of the mower, the Court agrees with Defendants that the same principles apply to the question of the propriety Locks Law's representation of Plaintiffs and Candido in this matter.

While the parties dispute the exact series of events leading to A. N.'s injuries, A. N. was undisputedly injured during the course of Candido's operation of the mower and her injuries resulted from contact with the mower blades during that operation. Although Defendants did not operate a second vehicle, Plaintiffs and Candido contend that the responsibility for A. N.'s injuries falls on Defendants, and Defendants claim that Candido, because he allowed A. N. to ride on the mower, also bears at least some degree of responsibility for A. N.'s injuries.

Despite Plaintiffs' argument that the directive of the New Jersey Supreme Court amounts to "very limited legal precedent which exclusively involves motor vehicle accidents," the circumstances surrounding A. N.'s injuries in this matter pose the same challenges as those arising from an attorney's representation of multiple family members injured in the same automobile accident. Dkt. No. 35 at p. 11. In such circumstances, where both child and parent are injured in an automobile accident with a second driver, "even though [child] and [parent] both share the same primary goal of recovering from [the] defendants, [a] counterclaim for contribution also creates adverse interests between them," necessitating separate attorneys "to represent each opposing interest . . . ." *Weinberg v. Underwood*, 101 N.J. Super. 448, 453, 244 A.2d 538, 541 (Co. 1968).

Here, while A. N. and her parents share the same "primary goal of recovering from [D]efendants," Defendants' assertion of a counterclaim for contribution against Candido has created adverse interests between them. *Id.* Thus, the Court finds that the New Jersey Supreme Court's guidance regarding the representation of a passenger and driver of a vehicle applies to the matter at hand.

In light of the foregoing, the Court must now determine whether a legal bar exists to any claims which may be asserted by A. N. against Candido. If not, because Defendants have asserted a counterclaim for contribution against Candido, Locks Law "must completely withdraw from the representation of each client." *McDaniel,* 419 N.J. Super. at 497, 17 A.3d at 825 (citing Ethics Opinion No. 156, 92 *N.J.L.J.* 481 (1969)).

Plaintiffs and Candido argue that the doctrine of parental immunity bars any claims by A. N. against Candido.[5] The doctrine of parent-child immunity was first recognized in New Jersey in *Reingold v. Reingold,* 115 *N.J.L.* 532, 181 *A.* 153 (E. & A. 1935). In *Reingold*, a nineteen-year-old unemancipated child was precluded from recovering damages for injuries suffered as a passenger in an automobile owned by her stepmother and negligently driven by her father. *Id.* The Court of Errors and Appeals articulated as the main reason for its opinion the preservation of family tranquility. *Id.*

In *France v. A.P.A. Transp. Corp.,* 56 *N.J.* 500, 267 *A.*2d 490 (1970), the New Jersey Supreme Court partially repudiated the parental immunity doctrine and held that an unemancipated child could sue his or her parent for injuries that resulted from the parent's negligent operation of

---

[5] In addition to their argument that Defendants' counterclaim is barred by the doctrine of parental immunity, Plaintiffs contend that "[t]he principles of strict liability forbid contributory action from being brought against consumers who used a product if they were unaware of the defect that ultimately injured them." Dkt. No. 35 at p. 22-23.  According to Plaintiffs, the "undisputed" facts in this matter demonstrate that A. N.'s injuries were caused solely by a defect in the mower and not by Candido's operation of the mower. Thus, Plaintiffs' claim, Defendants cannot maintain a claim for contributory negligence against Candido. The Court does not agree. Not only do the "undisputed" facts cited by Plaintiffs, i.e. that "[Candido's] direct actions and normal use of the [m]ower, did not cause [A. N.'s] injury" appear to be very much in dispute, but Plaintiffs' arguments based on purportedly "undisputed" facts are inappropriate for a dismissal motion at the pleadings stage. Dkt. No. 35 at p. 23.

10

a motor vehicle. Although the court's holding *France* was limited to the abolition of parental immunity in claims arising out of a parent's negligent operation of a motor vehicle, the court nevertheless stated the general view that the immunity "should be abrogated in this State." *Id.* at 506, 239 A.2d 1. In the following years, the New Jersey Supreme Court "further cut back on the parental immunity doctrine." *Foldi v. Jeffries*, 93 N.J. 533, 540, 461 A.2d 1145, 1149 (1983) (collecting cases).

The current state of parental immunity in New Jersey "start[s] from the fundamental principle that liability ordinarily should be imposed upon those who wrongfully injure others" and observes that New Jersey's "laws have been fashioned to ensure that a person should be compensated fairly for injuries caused by the violation of his legal rights." *Foldi*, 93 N.J. at 544, 461 A.2d at 1151 (citations and quotations omitted). Indeed, "[m]inor children are entitled to the same redress for wrongs done them as are any other persons. To justify a prohibition of the enforcement of their rights, a very substantial showing must be made that such prohibition will help achieve an important countervailing policy." *Id.*

In *Foldi*, the New Jersey Supreme Court "made clear that [parental] immunity is limited" and "does not apply unless a matter implicates customary child-care issues or a legitimate exercise of parental authority or supervision. Nor does it apply when the parent's conduct is willful or wanton, which the Court defined as an 'intermediary position between simple negligence and the intentional infliction of harm.'" *Buono v. Scalia*, 179 N.J. 131, 137–38, 843 A.2d 1120, 1124 (2004) (citing *Foldi*, 93 N.J at 549, 461 *A*.2d 1145). For behavior to fall within the definition of "willful or wanton," a parent must be "conscious . . . that injury will likely or probably result from his conduct, and with reckless indifference to the consequences, [the parent] consciously and intentionally does some wrongful act or omits to discharge some duty which produces the injurious

11

result." *Foldi*, 93 N.J at 549, 461 A.2d 1145 (internal quotation marks and citation omitted). The New Jersey Supreme Court has further clarified that "[i]ncluded within the 'willful or wanton' concept is recklessness." *Buono*, 179 N.J. at 138, 843 A.2d at 1124.

Plaintiffs and Candido contend that any cause of action by A. N. against Candido "for putting her on the [m]ower . . . is a parental supervisory issue" which "would be barred by the Parental Immunity Doctrine." Dkt. No. 35 at p. 12. According to Plaintiffs, rather than being caused by Candido's "overt operation of the mower, i.e. striking [A. N.] or running her over with the mower," A. N.'s injuries were caused by the detachment of the chute from the mower, which Candido purportedly had no role in. *Id.* at p. 16. Thus, Plaintiffs claim, "the only attributable action which could be subject to review is [Candido's] act of permitting [A. N.] to ride the mower," which is "related to [Candido's] parental authority over [A. N.]" *Id.* at p. 16-17.

The New Jersey Supreme Court has made clear that "[c]rossing a street, driving a car, and a multitude of similar activities simply do not implicate legitimate child-rearing issues and, therefore, fall outside the purview of the immunity doctrine." *Buono,* 179 N.J. at 141, 843 A.2d at 1126. Specifically, as relevant to the present motion, an action by a child against his father based upon the father's alleged negligence in "operating a power lawnmower on his property which resulted in injury to the child" is not barred by the parental immunity doctrine. *Gross v. Sears, Roebuck & Co.*, 158 N.J. Super. 442, 386 A.2d 442 (App. Div. 1978). Indeed, there is "no substantial difference between permitting an unemancipated child to sue his parent for injuries resulting from the parent's negligence in driving a car, and permitting him to sue the parent for the negligent operation of a power mower. A contrary view would simply be myopic and unrealistic." *Id.* at 446, 386 A.2d at 444.

Plaintiffs attempt to distinguish *Gross* from the present matter by arguing that the exception

to parental immunity in *Gross* applies only in situations of "parental overt-negligent acts" and does not apply here because unlike in *Gross* where "the negligent operation of a lawnmower by a parent resulted in the child being struck by the flying debris," the injuries suffered by A. N. "were not caused by [Candido's] operation of the [m]ower." Dkt. No. 35 at p. 16. However, the court in *Gross* made clear that "[t]he essence of the alleged negligence herein arises out of the affirmative act of the parent in mowing the lawn. Whether or not this act was accompanied by a warning to his child to 'go away,' the cause of action does not constitute one arising out of the exercise of 'parental authority' so as to warrant the application of the immunity doctrine." *Gross,* 158 N.J. Super. at 447–48, 386 A.2d at 445. "Put another way, the duty the father owed to the child was no different from the duty he owed to the public at large when he operated the power mower." *Carey v. Davison*, 181 N.J. Super. 283, 290, 437 A.2d 338, 342 (Law. Div. 1981) (citing *Gross* 158 N.J. Super. at 446, 386 A.2d at 442). Thus, because Candido's affirmative act in mowing the lawn "does not constitute one arising out of the exercise of 'parental authority,'" it does not "warrant the application of the immunity doctrine." *Id.*

While the ultimate determination as to the apportionment of liability in this matter and the possible impact of the parental immunity doctrine on Candido's potential liability is not presently before the Court, in the context of the present motion, the Court must decide whether there exists a "legal bar" precluding any claims brought by A. N. against Candido.[6] *McDaniel*, 419 N.J. Super.

---

[6] The Court's finding as to the inapplicability of the parental immunity doctrine applies only in the context of the Court's present determination as to the propriety of Locks Law's representation of Plaintiffs and Candido and does not foreclose any future finding as to the applicability of the parental immunity doctrine to the various present and potential claims in this matter. Plaintiffs have requested that the Court dismiss Defendants' counterclaim and argue that a decision on the dismissal of Defendants' counterclaim is "dispositive to the motion to disqualify." Dkt. No. 40 at p. 1. However, a decision on the ultimate applicability of parental immunity to Defendants' counterclaim is premature at this juncture. *See Buono*, 179 N.J. at 138, 843 A.2d at 1124 ("Ultimately, whether conduct implicates parental decision-making, or whether it satisfies the 'willful or wanton' exception to the immunity doctrine, will depend on the totality of circumstances in a given case, subject to a fact-sensitive analysis by the trial judge and, when warranted, by a jury."); *Barkosky by Barkosky v. Weber's Training Sch.*, No. A-3142-21, 2023 WL 4145397, at *5 (N.J. Super. Ct. App. Div. June 23, 2023) (finding that the dismissal of a defendant's counterclaims for contribution and indemnification on the basis of the parental immunity doctrine "at the pleading stage was premature."). The

at 497, 17 A.3d at 824–25 (citing 91 N.J.L.J. 68 (Feb. 1, 1968)). Unlike in *McDaniel*, where an attorney was permitted to represent two potentially adverse parties to an automobile accident because New Jersey's workers' compensation statute "prohibit[ed] an injured employee's legal action to recover for injuries caused by a fellow employee," the Court finds that the parental immunity doctrine, at this juncture, does not act as a clear legal bar to any potential claims by A. N. against Candido. *McDaniel*, 419 N.J. Super. at 490, 17 A.3d at 820.

Because Plaintiffs, at the present juncture, have not established the existence of a legal bar to claims by A. N. against Candido, "even though [A. N.] and her parents both share the same primary goal of recovery from [D]efendants," Defendants' counterclaim against Candido has "created adverse interests" between A. N. and Candido and "separate attorneys are necessary to represent each opposing interest . . . ." *Weinberg,* 101 N.J. Super. at 453, 244 A.2d at 541. Furthermore, because Locks Law represented A. N. and her parents "before the fission of their interests occurred and [has] knowledge of all their positions" it cannot now "fairly represent" the interests of A. N. or her parents. *Id.* Although the Court acknowledges the hardship inflicted on Plaintiffs and the disruption to this matter caused by the disqualification of Locks Law, in the present circumstances, "the attorney who undertakes to act for several plaintiffs must retire from

---

applicability of parental immunity appears to be decided, at the earliest, in connection with summary judgment. *See Horn By & Through Kirsch v. Price*, 255 N.J. Super. 350, 353, 605 A.2d 274, 275 (App. Div. 1992) (after discovery was completed, parent moved for summary judgment on the issue of parental immunity); *DeMarco v. DeMarco*, 274 N.J. Super. 257, 259, 643 A.2d 1053, 1054 (Law. Div. 1992), *aff'd,* 274 N.J. Super. 210, 643 A.2d 1029 (App. Div. 1994) (issue of parental immunity raised in motion for summary judgment). Thus, although Plaintiffs argue that no conflict exists because Defendants' counterclaim, Plaintiffs believe, will ultimately be dismissed, this matter is still in the fact discovery stage and any decision as to the dismissal of Defendants' counterclaim is therefore premature. While Plaintiffs may indeed prove correct as to the applicability of the parental immunity doctrine as a bar Defendants' counterclaim, Locks Law's conflict in representing Plaintiffs and Candido was created by the filing of Defendants' counterclaim and the resolution of that conflict cannot await the completion of discovery and the disposition of the parties' future motions for summary judgment.

all representations with consequent delay, interruption of proceedings and expense." *Conflict of Interest*, 1970 WL 237370, at *1.

Based on the foregoing, Defendants' motion to disqualify Locks Law from representing Plaintiffs or Candido in this matter is **GRANTED** and Locks Law is hereby disqualified from representing Plaintiffs or Candido in connection with this matter.[7]

### B. Motion to Remove Marina as Guardian ad Litem for A. N.

In addition to the disqualification of Locks Law, Defendants seek the removal of Marina as guardian ad litem for A. N. and the appointment of a new guardian ad litem. Because A. N. is a domiciliary of New Jersey, New Jersey Court Rule 4:26–2 applies. *Gibbs ex rel. Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 129 (3d Cir. 2002). Pursuant to N.J. Ct. R. 4:26-2:

> In negligence actions, unless the court otherwise directs, a parent of a minor shall be deemed to be appointed guardian ad litem of the child without court order upon the filing of a pleading or certification signed by an attorney stating the parental relationship; the child's status and age; the parent's consent to act as guardian ad litem; and the absence of a conflict of interest between parent and child.

N.J. Ct. R. 4:26-2(b)(1).

"An opposing party may petition for a guardian ad litem's removal if adequate grounds exist." *Zukerman by Zukerman v. Piper Pools, Inc.*, 232 N.J. Super. 74, 89, 556 A.2d 775, 783 (App. Div. 1989). "[A]ny such removal must be for good cause and based on clear and convincing

---

[7] Plaintiffs state that "a waiver-instruction has been issued, compelling [Locks Law] to only proceed with an action against the defendant manufacture-distributor in this matter." Dkt. No. 35 at p. 25-26. Although not explicitly stated, it appears that the aforementioned waiver of A. N.'s potential claims against Candido was undertaken by Marina in her role as guardian ad litem for A. N. Setting aside the potential conflicts of interest between A. N. and Marina, which the Court will address in connection with the portion of Defendants' motion which seeks the removal of Marina as A. N.'s guardian ad litem, the Court finds that the present conflict is not subject to waiver. *See Whitman v. Estate of Whitman*, 259 *N.J.Super.* 256, 612 *A.*2d 386 (Law Div.1992) (stating that "[o]ne attorney may represent both the driver and a passenger as plaintiffs in a motor vehicle case provided it is clear that the other driver was completely responsible for the accident and the attorney complies with all of the disclosure and consent requirements); *Conflict of Interest*, 1970 WL 237370, at *1 (stating that an attorney's representation of both driver and passenger against the driver-owner of another vehicle is "improper notwithstanding consent" and that "[p]ublic policy precludes an exception by waiver and consent" under such circumstances).

15

evidence of misconduct or inability to serve the best interests of the ward, or incapacity of the guardian ad litem. It may include conflict of interests which would prevent any reasonably prudent person, including a parent, from continuing to serve as a guardian ad litem." *Id.* at 786.

Defendants contend that Marina has three separate conflicts of interest in this matter which necessitate her removal as A. N.'s guardian ad litem. First, Defendants argue that Marina "would not want her husband to be named as a [D]efendant in this lawsuit" due to both their marital relationship and the possibility of adverse financial consequences to their family in the event that a judgment is entered against Candido. Dkt. No. 34-1 at p. 13. Secondly, Defendants allege that because Marina has asserted her own individual claim for damages in this matter, she would have a conflict of interest in the division of any future settlement proceeds between herself and A. N. Finally, Defendants state that if discovery in this matter confirms that Marina was aware that Candido was operating the mower with A. N. as a passenger, they intend to seek to amend their counterclaim for contribution to include Marina.

As to Defendants' first argument, that Marina's status as Candido's wife creates a conflict between Marina and A. N. inasmuch as Marina will naturally wish to avoid any finding of liability as to Candido, the Court notes that in actions similar to the present, where a minor child is injured due to at least some level of alleged negligence on behalf of their parent, the parent of the injured minor child has been permitted to continue to serve as guardian ad litem. *See Gross*, 158 N.J. Super. 442, 386 A.2d 442 (suit brought by injured child by his mother as guardian ad litem against his father); *Carey v. Davison*, 181 N.J. Super. 283, 284, 437 A.2d 338, 339 (Law. Div. 1981) (father acting as guardian ad litem for his minor child instituted action on child's behalf for injuries after child was struck by an automobile while crossing the street). Thus, while there may be some level of conflict present in any matter in which a parent acts on behalf of their child

16

in ways that may not be in their own self-interest or that of their spouse, in the absence of any authority cited by Defendants suggesting that such circumstances create a conflict necessitating the removal of such a parent as their child's guardian ad litem, the Court declines to remove Marina as A. N.'s guardian ad litem on that basis alone.

Defendants' second and third alleged conflicts, while undeniably problematic, are, at least at the present juncture, speculative. In the event a settlement is reached in this matter and the settlement proceeds need to be fairly divided among the various parties, the Court will consider the appointment of a guardian ad litem to ensure that A. N.'s interests are properly considered and represented. Similarly, if Defendants amend their counterclaim in the future to include a claim against Marina, the Court will address the need for the appointment of a new guardian ad litem for A. N. at that time.

Thus, while Defendants' concerns regarding the possible conflicts of interest between Marina and A. N. are well taken, the Court finds that there is no present need for Marina's removal as A. N.'s guardian ad litem. Accordingly, Defendants' motion for the appointment of a new guardian ad litem for A. N. is **DENIED**.

### III. CONCLUSION AND ORDER

The Court having considered the papers submitted pursuant to Fed. R. Civ. P. 78, and for the reasons set forth above;

**IT IS** on this 18th day of December, 2023,

**ORDERED** that Defendants' motion to disqualify counsel and appoint a new guardian ad litem for Plaintiff A. N. [Dkt. No. 34] is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that Defendants' motion to disqualify Locks Law from representing Plaintiffs

or Candido in this matter is **GRANTED**; and it is further

      **ORDERED** that Defendants' motion for the removal of Plaintiff Marina Nobrega as guardian ad litem for Plaintiff A. N. is **DENIED**.

                                                                                                          s/ James B. Clark, III
                                                                                                           **JAMES B. CLARK, III**
                                                                                                           **United States Magistrate Judge**